(Reap. Dec. 10056)

THE A. W. FENTON CO., INC. *v.* UNITED STATES

Entry No. 447, etc.

(Decided August 9, 1961)

*Edward O. Crouch* and *Richard R. Hollington, Jr.* (*Richard R. Hollington, Jr.,* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* and *Daniel I. Auster,* trial attorneys), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of the values of certain electromagnetic clutches and parts, which were exported to the United States from the Federal Republic of Germany between July 27, 1957, and January 4, 1958.

The clutches were entered at the invoiced unit values, less a 25 per centum quantity discount appearing on the invoices, packed. On appraisement, the 25 per centum discount was disallowed, and, in some instances, the merchandise was returned by the appraiser at higher unit values than those shown on the invoices. In all cases,

the appraiser allowed a discount of 2 per centum, presumably for cash or prompt payment, plus an item for packing.

While both parties are in agreement that the proper basis of value of the involved merchandise is foreign value, as defined in section 402a(c), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, it appears that all of the merchandise here involved was entered, or withdrawn from warehouse, for consumption prior to the effective date (February 27, 1958), of the amendment of the Tariff Act of 1930 brought about by the Customs Simplification Act of 1956. The proper basis of value applicable to the merchandise is, therefore, foreign value, as defined in section 402(c) of the Tariff Act of 1930, as it existed prior to amendment by the Customs Simplification Act of 1956.

As the case comes before me, counsel for the plaintiff has conceded the correctness of the values returned by the appraiser, except with respect to the 25 per centum quantity discount from the unit values, which discount, the plaintiff contends, is properly deductible from the appraised unit values.

It appears from the record that the involved clutches and parts are used in the drives of machine tools, such as lathes, milling machines, shapers, etc., and operate on the principle of passing electricity through a coil, which creates a magnetic field, which, in turn, attracts an armature. As the armature is attracted, it pulls a pressure plate and compresses a disc pack, which action fully couples the clutch so that both the driving and driven portions rotate at the same speed. When the electrical force is discontinued, the armature and pressure plate retract, and the disc pack is relaxed so that the mechanical connection between the driving and driven portions is broken.

Prior to, and concurrent with, the present importations, the manufacturer and exporter of the clutches at bar produced a similar clutch having the same functions. The earlier clutch differed from those at bar only in the means by which the electricity was transmitted to the field coil. In the earlier clutches, the field coil rotated with the driving shaft, and electricity was transmitted to it by means of slip rings and brushes riding thereon. The present clutches represent a modification of that design by making the field coil stationary, thus eliminating the slip rings and brushes and resulting in lower maintenance cost.

Evidence offered by the plaintiff, consisting of the affidavit of the general sales manager of the manufacturing and exporting company under date of March 10, 1961 (plaintiff's exhibit 1), indicates that, because of the fact that the new design clutches were just being introduced into the German domestic market, purchasers for home consumption in 1957 confined their purchases to single units on a

trial basis to test their performance. This evidence is corroborated by that contained in the report of a United States Treasury representative concerning an investigation made at the offices of the manufacturer and exporter under date of December 9 and 10, 1957 (defendant's exhibit A).

It would appear from the statements made in the affidavit above referred to (plaintiff's exhibit 1) that sales of the new design clutch picked up after 1957, but, inasmuch as the period of exportation of the present importations was essentially the latter half of 1957, this fact is only of academic interest in the determination of the value of the merchandise at the times of exportation here involved.

It also appears from evidence offered by both parties that at the times here involved, the manufacturer and exporter in Germany offered quantity discounts, depending upon the number of pieces of its products purchased in one sale. However, the evidence offered by the plaintiff, as shown in the affidavit, exhibit 1, as to the number of pieces required to be purchased to obtain such discounts, and also as to the amounts of the discounts offered, is not in agreement with that offered by the defendant, as shown in the report, exhibit A.

It is clear, by their positions, as outlined in the briefs filed in behalf of the parties, that counsel therefor have limited the issue to the question of the propriety of allowing a quantity discount from the unit values returned by the appraiser.

The issue of quantity discounts is, in turn, bound up with the question of what, under the definition of foreign value, as set forth in section 402(c), *supra*, is "the usual wholesale quantities" in which merchandise such as or similar to that in issue was freely offered for sale for home consumption in Germany. When merchandise is offered for sale at prices which vary according to the quantity purchased, the statutory value of the merchandise is that price at which "the usual wholesale quantities" are sold. *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912.

Plaintiff contends that, inasmuch as the sales made in the German market for home consumption in 1957 of merchandise identical with that in issue, i.e., the stationary field coil or new design clutch, were in the nature of sample deliveries for experimental purposes, they were not sales made in the ordinary course of trade, and that, for the purpose of determining the value of the imported merchandise under section 402(c), *supra*, resort should be had to the sales of similar merchandise, to wit, the slip-ring type of clutch. Plaintiff further contends that its evidence shows that the usual wholesale quantities in which the slip-ring type of clutches were sold in Germany during the times here pertinent was 20 or more units, for which the purchaser received a 25 per centum discount.

Defendant's position is that the plaintiff has failed to establish a *prima facie* case in support of its contentions.

Plaintiff's evidence with respect to "the usual wholesale quantities," referred to in the statute, is basically contained in paragraphs 14 and 15 of the affidavit of the general sales manager of the manufacturer and exporter, received in evidence as exhibit 1. These paragraphs read as follows:

14. That in 1958 and 1959 a greater volume of electromagnetic clutches was sold to German purchasers in quantities of 20 or more pieces, for which a 25% discount was afforded such purchasers, that [so in copy—than?] the aggregate volume sold during said years in any lesser quantity of clutches and that the same is true with reference to sale of slip ring type clutches in each of the years, 1957, 1958 and 1959.

15. That approximately 500, 1,000, and 3,000 electromagnetic clutches were sold by Wilhelm Binder K.G. in the year 1957, 1958 and 1959 respectively: and that approximately 4,000 and 8,000 slip ring type clutches were sold to purchasers in the periods from August 1957 to July 1958 and August 1, 1958 to December 31, 1959, respectively.

Apparently, by the use of the term "electromagnetic clutches" in the foregoing paragraphs, the affiant intended to refer to the new design clutches with the stationary field coil, as distinguished from the slip-ring type of clutches.

The statement in paragraph 14 is couched in the language used in section 402(f)(5), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, defining the term "usual wholesale quantities." The said definition reads as follows:

The term "usual wholesale quantities," in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

It is noted that the foregoing definition is limited in its application to the definitions of the bases of value contained in *section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956*. Section 402(f) indicates that the definitions of terms contained therein are "For the purposes of this section," that is to say, section 402 *of the amended act*. As hereinbefore noted, the merchandise at bar is not subject to appraisement under the amended act, but under section 402(c) of the act, as it existed prior to amendment.

Prior to the enactment of the Customs Simplification Act of 1956, the term "the usual wholesale quantities," as then found in section 402(c) of the Tariff Act of 1930 (which was redesignated as section 402a(c) by the provisions of the Customs Simplification Act), was

held to refer to the quantities involved in a major portion, i.e., the greatest number of sales or offers for sale. *F. S. Whelan & Sons* v. *United States*, 39 C.C.P.A. (Customs) 168, C.A.D. 482.

Consequently, for the purposes of that section, the market value or the price of merchandise sold for home consumption at prices which varied with the quantity sold was the price for the quantity or quantities in which the greatest number of sales or offers for sale were made.

Thus, "the usual wholesale quantities" for the purposes of section 402(c) of the tariff act, *as it existed prior to the effective date of the amendment thereof*, may be different from "the usual wholesale quantities" for the purposes of section 402 of the said act, *as amended.* The plaintiff's proof, in this case, being directed toward establishing the price at which the greatest *volume* of sales for home consumption were effected, would not necessarily establish the price at which the greatest *number* of sales for home consumption were effected.

Moreover, I am satisfied that, in any event, plaintiff has not made out a *prima facie* case in support of the values claimed.

First, if sales in 1957 for home consumption in Germany of merchandise "such" as that here involved, i.e., identical clutches of the stationary field coil type, be considered to be sales in the ordinary course of trade, it is clear that such sales were in single unit quantities, which, under the evidence offered by both the plaintiff and the defendant, would not qualify for any discount.

Second, if sales of "such" merchandise should be considered to be *not* in the ordinary course of trade, and recourse be had to sales of "similar" merchandise, i.e., clutches of the slip-ring type, the evidence offered by the plaintiff does not meet the standards of proof required in such matters.

The said evidence consists of the statement, heretofore quoted, made by the affiant in exhibit 1, to the effect that a greater volume of slip-ring type clutches was sold to German purchasers in quantities of 20 or more pieces than the aggregate volume sold in any lesser quantity.

Such a statement, of course, is a conclusion of ultimate, issuable fact made by the affiant from facts or knowledge in his possession but not specifically revealed in the affidavit. It is true that the statement is made by a person who identifies himself as the general sales manager of the company, and who, presumably, would be familiar with the sales made by his company and the prices received therefor.

However, our appellate court, in a series of cases relating to the nature and degree of proof required to overcome the statutory presumption of correctness attaching to the value returned by the appraiser, has consistently held that such statements or conclusions of ultimate, issuable fact are not, standing alone, substantial evidence

sufficient to support a finding of fact contrary to the findings implicit in the appraiser's return of value. See *Brooks Paper Company* v. *United States;* 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 id. 194, C.A.D. 593; *United States* v. *Fisher Scientific Co.*, 44 id. 122, C.A.D. 648; and *United States* v. *Baar & Beards, Inc.*, 46 id. 92, C.A.D. 705.

The evidence contained in paragraph 15 of the affidavit as to the number of clutches that were sold is too ambiguous to be considered, in any sense, to support the conclusion stated in paragraph 14, or to establish any fact which would tend to prove any values for the merchandise other than those returned by the appraiser.

On the record presented, I find as facts:

(1)    The merchandise consists of electromagnetic clutches of the stationary field type, together with related parts, exported from Wilhelm Binder, K. G., of the Federal Republic of Germany to the United States between July 27, 1957, and January 4, 1958, and entered for consumption between August 5, 1957, and February 24, 1958.

(2)    The plaintiff was the exclusive American purchaser of such merchandise from the exporter.

(3)    At or about the times of exportation here involved, merchandise such as or similar to that in issue was freely offered for sale to all purchasers for home consumption in Germany.

(4)    The merchandise was appraised at values which did not include any quantity discounts.

(5)    The parties have limited the issue to the propriety of allowing a quantity discount from the appraised unit values.

(6)    Plaintiff has failed to adduce substantial evidence of the usual wholesale quantities in which merchandise, such as or similar to that in issue, was sold or offered for sale for home consumption in Germany at or about the times of exportation here involved.

I conclude as matters of law:

(1)    That foreign value, as defined in section 402(c), Tariff Act of 1930, as it existed prior to the effective date of the amendment of said act by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved, and

(2)    That plaintiff having failed to establish any values for the merchandise other than those returned by the appraiser, by operation of section 2633 of title 28, United States Code, the said values returned by the appraiser are the correct values of the merchandise.